UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUIS BALESTRACCI, JEAN BONVILLE, ANDREW CARR, ROBERT COMEAU, LEO CONNELLY, JR., JOHN H. CORCORAN, JR., THOMAS DEARN, RICHARD ELDREDGE, RICHARD FLETCHER, BRIAN HAWKESWORTH, BEAUFORD HUNT ROBERT LAWRENCE, JOSEPH LOPES, DAVID MANN, GARY MEYN, RUSSELL NICKERSON, DIANE OWENS, ERNEST QUINTIN, DONNA RENE, JOSEPH SOCHA, STEPHEN WATTS, and DUNSTAN WHITLOCK<br>Plaintiffs<br><br>v.<br><br>NSTAR ELECTRIC & GAS CORPORATION<br>Defendant | Civil Action No. 04-CV-11103-EFH |

**PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs submit the following statement of material facts of record as to which they believe that there is no genuine issue to be tried:

The 1997 Personnel Reduction Program

1. In 1997 Commonwealth Gas Company and Commonwealth Electric Company had merged and decided to reduce the work force, both management and labor. To accomplish this, they sought to attract employees to retire voluntarily. (Tieuli dep. at 19)

2. In May 1997 Commonwealth Gas distributed to employees a document entitled "Personnel Reduction Program.," (Exhibit A) The document did not contain any

1

statement reserving a right in the Company to terminate health or dental insurance coverage. The program document included the following provision:

Health and Dental Insurance Coverage:     ...

3 Employees who were at least age forty (40) and had completed at least twelve (12) full years of System service as of January 1, 1993 and currently meet the "Rule of 75" will be entitled to medical and dental insurance coverage providing they pay ten percent (10%) of the current medical and dental premium until age sixty two (62). At age 62, the Company will pay 100% of the premium.

(Exhibit A, p. 2)

       3. Based on their ages and years of service, plaintiffs Balestracci, Carr, Comeau, Hunt, Quinton, Socha and Whitlock qualified to participate in the 1997 program under paragraph 3 above. (Affidavits of plaintiffs Balestracci, Carr, Comeau, Hunt, Quinton, Socha and Whitlock)

       4. The above plaintiffs and other employees who indicated an interest in participating in the 1997 Personnel Reduction Program were each given documents entitled "Information Relative to Employee Benefits Upon Your Retirement Date." These documents provided individualized information for each employee concerning his/her amount of group life insurance, employee savings plan insurance and severance pay plan balance. The document also contained the following provisions concerning health and dental insurance:

HEALTH INSURANCE

A. Medical Insurance
Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored medical insurance plans at your Actual retirement Date until you become eligible for Medicare.. You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.

> When you become eligible for Medicare, your primary medical insurance coverage will be through Medicare Part "A" and Part "B". Currently, the Company reimburses you for the cost of Medicate Part "B". there is no additional cost to you for Medicare Part "A" when you become eligible for the coverage. The Company provides a Medicare supplement which extends over and above the entire cost of the Medicare supplement.
>
> Coverage for your spouse and/or any eligible dependent(s) will be provided.
>
> Your medical insurance coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.
>
> B. Dental Insurance
> Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored dental plan at your Actual Retirement Date.
>
> You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.
>
> Coverage for you spouse and/or any eligible dependent(s) will be provided.
>
> Your dental coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

(Exhibit B; Comeau dep. Exh. 3)

5. The statement of benefits and individualized information provided to the plaintiffs listed above and others contained no reservation of right of Commonwealth Gas to terminate lifetime health and dental benefits. Plaintiffs Balestracci, Carr, Hunt, Quintin, Socha and Whitlock were given the same document as Comeau, with their own respective individual pension benefit calculations and options, the amount of their own life insurance, the amount of their own employee savings plan balance, and the amount of

3

their executive salary continuation and excess benefit plan or severance pay plan contribution. (Memorandum in support of Defendant's Motion to Dismiss, tab C)

6. Plaintiffs Balestracci, Carr, Comeau, Hunt, Quinton, Socha and Whitlock, accepted the company's 1997 Personnel Reduction Program and retired, in reliance of the promises of benefits described in Exhibits A and B, including the promise of lifetime health and dental benefits for them and their spouses and eligible dependents. They executed required releases of rights documents (Affidavits of Balestracci, Carr, Comeau, Hunt, Quinton, Socha and Whitlock)

7. After they has elected to participate in the program and executed releases, Plaintiffs Balestracci, Carr, Comeau, Hunt, Quinton, Socha and Whitlock received a document of 264 pages entitled "Participant Benefit Information. (Peloquin depo. at 1/62-63. NStar has taken the position that the lifetime dental benefit statement in the individual Information document given to those employees who accepted the 1997 and 1999 retirement incentive programs was qualified and limited by this and similar documents. (Peloquin depo. at 1/62-69) The 264 page document was a series of summary plan descriptions (herein SPD's) for the Employee Savings Plan, the Master Medical Plan, the Blue Choice Plan, the Medex Plan, the Dental Blue Plan, the Life Insurance Plan and the Pension Plan. (Peloquin depo. at 1/62-63)

8. At page DB 33 of the Dental Blue Plan, under the heading "Your Rights" the following text appears:

> This section describes the Dental Blue Program 2 in general. If any conflict arises between this document and the Plan document, or if we do not cover any point, the terms of the Plan Document will always govern.
>
> The Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at any time.

> Please refer to the Administrative Information section for all information related to the administration of this Plan.

(Exhibit C, Peloquin depo., Exh. 19) The "Plan document" referred to was a 1993 document that was not given to employees. (Peloquin depo. at 1/65-66)

9. Prior to the plaintiffs' execution of documents accepting the 1997 PRP and the releases of rights, each of them met with a company representative to review the individual Information documents. At no time during those meetings or any other time before their retirement did Commonwealth Gas or any of its representatives tell the employees that the lifetime dental benefit could be cancelled. And at no time did the company or any of its representative refer to or direct employees' attention to the statement quoted in paragraph 8, supra. (Affidavits of plaintiffs Balestracci, Carr, Comeau, Hunt, Quinton, Socha and Whitlock)

## The 1999 Voluntary Separation (VSP) Program

10. In connection with the 1999 merger of Commonwealth Energy System and Boston Edison to form NSTAR Electric and Gas Company, there were "redundancies" that the company wished to address. It wanted to "reduce its [work] force on a voluntary basis as much as possible." (Peloquin depo. at 2/33). In the summer of 1999 the company distributed to its employees a document entitled "Com/Energy - Boston Edison 1999 Voluntary Separation Program, Program Summary. (Exhibit D)

11. The 1999 VSP document, Exhibit D contained the following statement (Exhibit D at pages 4-5):

5

<u>Health Coverage</u>

Your medical, dental and vision care coverage, if applicable, end following your separation of service with the Company. You may, however, elect to continue these coverages for a period of 18 months thereafter under COBRA (the Consolidated Omnibus Budget Reconciliation Act). Under COBRA continuation, you are required to pay the full cost of coverage plus an additional administrative expense.

The Company has retained CobraServ to administer its COBRA continuation program. CobraServ will perform the record keeping premium billing and collection relating to your COBRA continuation coverage, if you are eligible and elect it.

Under the 1999 Voluntary Separation Program:

- <u>For the first nine months of COBRA continuation, you will pay the same employee contribution for medical coverage that similarly situated active employees are paying during this period.</u>

- After the initial nine months, you may continue medical coverage for an additional nine months, by paying the full COBRA cost described above.

- You may continue dental and/or vision care coverage by electing continuation of coverage, if applicable, under COBRA from your termination of coverage, and paying the full COBRA cost for these coverages.

- Health care coverage continuation is available only if you are not provided coverage under another group health plan, are entitles for Medicare and only while you continue to pay the required amounts.

- If you eligible for post-retirement medical, dental and life insurance coverages, you will receive information from Human Resources-Benefits at the time of your termination.

Plaintiffs Bonville, Connelly, Corcoran, Dearn, Eldridge, Fletcher, Hawkesworth, Lawrence, Lopes, Mann, Meyn, Nickerson, Owens, Rene and Watts were "eligible for post-retirement medical, dental and life insurance coverages" because they were all age 40 or more, had at least 12 years of System service as of January 1, 1993 and satisfied the "Rule of 75" (age and years of service totaled 75 at the time of retirement). Affidavits of

plaintiffs Bonville, Connelly, Corcoran, Dearn, Eldridge, Fletcher, Hawkesworth, Lawrence, Lopes, Mann, Meyn, Nickerson, Owens, Rene and Watts)

12. Employees who considered participating in the 1999 program each met with a representative of their company's benefits department, and were given a document entitled "Information Relative to Employee Benefits Upon Termination of Employment." That document was reviewed with them at that time. These documents provided individualized information for each employee, including his/her pension benefit calculations and options, the amount of life insurance, their employee savings plan balance and the value of their executive salary continuation and excess benefit plan or severance pay plan. The document also contained the following information concerning health and dental benefits:

HEALTH INSURANCE

A. Medical Insurance
Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored medical insurance plans at your Actual retirement Date until you become eligible for Medicare.. You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.

When you become eligible for Medicare, your primary medical insurance coverage will be through Medicare Part "A" and Part "B". Currently, the Company reimburses you for the cost of Medicate Part "B". there is no additional cost to you for Medicare Part "A" when you become eligible for the coverage. The Company provides a Medicare supplement which extends over and above the entire cost of the Medicare supplement.

Coverage for your spouse and/or any eligible dependent(s) will be provided.

Your medical insurance coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

7

B. Dental Insurance

Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored dental plan at your Actual Retirement Date.

You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62. When you reach age 62, the Company will pay the entire premium.

Coverage for you spouse and/or any eligible dependent(s) will be provided.

Your dental coverage will be for your life. Your spouse and/or eligible dependents will be covered for 12 months after your death. At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

13. The individualized documents given to plaintiff Corcoran is Exhibit E. The other plaintiffs who accepted the 1999 VSP and retires received the same documents with their own personal pension, insurance, savings plan and severance statements. (Memorandum in support of Defendant's Motion to Dismiss, tab E) The statement of benefits and individualized information provided each eligible employee contained no reservation of rights on the part of the company to terminate lifetime health and dental benefits.

14. Plaintiffs Bonville, Connelly, Corcoran, Dearn, Eldridge, Fletcher, Hawkesworth, Lawrence, Lopes, Mann, Meyn, Nickerson, Owens, Rene and Watts were age 40 and had 12 years of System service as of January 1, 1993 and met the Rule of 75 requirement in 1999, thus satisfying the requirements for the 1999 program. They elected to retire, relying on the benefits set forth in the individualized documents given them that described their benefits, Exhibit E, distributed by the company, including the promise of lifetime dental coverage for them, their spouses and eligible dependents. They executed releases of claims against the company. (Affidavits of plaintiffs Bonville, Connelly,

Corcoran, Dearn, Eldridge, Fletcher, Hawkesworth, Lawrence, Lopes, Mann, Meyn, Nickerson, Owens, Renee and Watts) A copy of the Agreement and Release employees who participated in the 1999 Voluntary Separation Program were required to sign is Exhibit F.

15. After the plaintiffs who elected the 1999 VSP had signed their agreements and releases, they received a document of 263 pages comprising a series of summary plan descriptions for the various benefit plans prepared by the insurance providers. The document received by plaintiff Diane Owens is Exhibit G. (Owens depo. at 24, Owens depo. Exh 5) At pages DB 16-17 the following paragraph appears:

> C. Termination of your *Contract*
> (1) You or Your Plan *Sponsor* May Terminate Your *Contract*—Your *Plan Sponsor* may terminate your *contract* for any reason. You may also terminate your *contract* through your *Plan Sponsor*. To do so your *Plan Sponsor* must give us notice in writing within 30 days of termination.

16. Bernard Peloquin is the Director of Total Compensation at NSTAR Electric and Gas Company. From 1993 until the merger with NSTAR he was manager of employee benefits for Commonwealth Gas Company and the Commonwealth Energy System companies. When asked in a deposition how the language in the information to employees documents used in 1997 and 1999 was drafted, he testified:

A. .. We looked at the whole thing, the whole disclosure, to people who were leaving the company. And at the time we had a lot of people leaving because of the programs. So it was a function of let's have a consistent message going out to everybody. It's all being administered centrally. And we reviewed not only this particular language, but all the language. And this we felt was an accurate reflection of the benefit people would receive at that time.

Q. Okay. Was there an effort in this process to be more clear and careful about what you were saying?

A. I think it was an accurate description of the benefit that people would receive. This was the currently available benefit to people, and it was an accurate reflection.

(Peloquin dep. at 1/55-56, Rule 30(b)(6) deposition on behalf of NSTAR in <u>Senior, et als. v. NSTAR Electric and Gas Corporation</u>, Civil Action No. 04-10160-EFH). Peloquin further stated that the individualized documents given to the employees in connection with the 1997 Personnel Reduction Program and the 1999 Voluntary Separation Program promising, inter alia, lifetime dental benefits given to employees in connection with the 1997 Personnel Reduction Program and the 1999 Voluntary Separation Program promising, inter alia, lifetime dental benefits, were general forms, customized for the individual employee's situation. (Peloquin depo. at 2/21) The purpose of these documents, he stated, was "to try to summarize at a high level the benefits that [the employees] may be eligible for under the particular plans and plan documents," (Id., at 2/22-23) containing "certain elements of those plans to make it easier for them to review. (Ibid.). But the company, Peloquin testified, reserved the right to change or cancel dental coverage for retirees and their spouses. He relied on the statement on page DB 33 of the 264 page document entitled "Participant Benefit Information" (see ¶ 8 supra) under the heading "Your Rights" that the company reserved the right to amend, modify or terminate the plan at any time. (Peloquin depo. at 1/64-65)

17. Asked why the company stated in the individualized documents given to the employees that dental coverage would be for their lifetimes and for their spouse and eligible dependents for 12 months after the employee's death, Peloquin responded:

10

> A. Well, the intent of this document was just to provide a brief summary of all of the employee benefit plans. They were not intended to be a detailed description of the employee benefit plans, and they can't be read in isolation of the other documents. ... [The statement of lifetime benefits] was accurate as of that particular point in time, but the company did retain the right to make changes to those plans. ... It was applicable – it was for your life at that particular point in time, but it was subject to the plan documents and the company's ability to make changes.

(Peloquin depo. at 2/16, 18)

### Changes in Health Insurance Carriers and Policies

18. Since 1973 the health and dental group insurance benefit plans for employees of Commonwealth Gas Company have been changed from time to time. The Company has added plans, changed benefits, changed insurance carriers, changed trustees, changed individual benefits provided in the plans and changed employee co-payments. (Peloquin dep. at 2/8, 37) In the mid-1990's the Company changed dental benefit providers from Delta Dental to Dental Blue. (Peloquin dep. at 2/8, 10-11)

19. The affidavit of Carol S. Chandor, an expert in insured employee medical and dental benefit plans, states that the provisions of the SPDs for health and dental plans used by Commonwealth Gas in 1990, 1994 and 1997 are prepared by the insurance providers, Delta Dental Plan or Blue Cross Blue Shield of Massachusetts and are not unique to Commonwealth Gas Company. She states: "In preparing and issuing summary plan descriptions Massachusetts health and dental insurers typically include a provision allowing the plan sponsor ( the employer who provides and purchases the insurance coverage for its employees and retirees) to terminate the coverage at any time." She also states that employers regularly review their plans, the plan design and service levels of

11

their insurers and may change insurance providers. She observes that the language providing for lifetime dental coverage in the documents given to employees in the 1997 and 1999 early retirement programs do not specify any particular insurance provider or any particular plan. Therefore the standard termination clause in the Dental Blue SPD does not negate or limit the promised lifetime dental coverage.

Respectfully submitted:

LOUIS BALESTRACCI, et als.,
By their attorneys,

*/s/ Warren H. Pyle*
Warren H. Pyle, BBO # 408400
Pyle, Rome, Lichten, Ehrenberg
  & Liss-Riordan
18 Tremont Street, Suite 500
Boston, MA 02108
Tel: (617) 367-7200

Dated: March 4, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record, by hand delivery, on March 4, 2005.

*/s/ Warren H. Pyle*
Warren H. Pyle

Warren/NStar Balestracci Statement of Undisputed Facts