UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| LOUIS BALESTRACCI, JEAN BONVILLE, ANDREW CARR, ROBERT COMEAU, LEO CONELLY, JR., JOHN CORCORAN, JR., THOMAS DEARN, RICHARD ELDREDGE, RICHARD FLETCHER, BRIAN HAWKESWORTH, BEAUFORD HUNT, ROBERT LAWRENCE, JOSEPH LOPES, DAVID MANN, GARY MEYN, RUSSELL NICKERSON, DIANE OWENS, ERNEST QUINTIN, DONNA RENE, JOSEPH SOCHA, STEPHEN WATTS, and DUNSTAN WHITLOCK, <br><br>Plaintiffs, <br><br> v. <br><br> NSTAR ELECTRIC & GAS CORPORATION, <br><br> Defendant | Civil Action No. 04-11103-EFH |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO PROHIBIT USE OF EXPERT WITNESS (CAROL CHANDOR), TO STRIKE EXPERT REPORT, AND IN ALTERNATIVE FOR LEAVE TO CONDUCT DEPOSITION**

The Plaintiff retirees filed suit on May 25, 2004, raising claims over modifications to retiree dental benefits. A few days before, on May 12, 2004, this Court entered summary judgment for NSTAR Electric and Gas Corporation ("NSTAR") in Local 369, Utility Workers, et al. v. NSTAR Electric and Gas Corp., Civil Action No. 03-10530 (EFH), and dismissed the action. See Local 369, Utility Workers v. NSTAR Electric and Gas Corp., 317 F.Supp. 2d 69 (D. Mass. 2004) (Exh. A hereto). The Plaintiffs to that action made claims based on the same modifications to retiree dental benefits at issue in this action. Despite the entry of summary judgment in Local 369, the Plaintiffs to the present action have been allowed to engage in discovery for over six (6) months.

As part of discovery, Plaintiffs have produced an expert report from Carol Chandor, the managing director and CEO of an employee benefits consulting firm. In her report, Ms. Chandor expresses the opinion that certain retirees were guaranteed lifetime dental insurance coverage, and that language in Company documents "does not eliminate this guarantee." (See Exh. B hereto at 6). Ms. Chandor's report and anticipated testimony simply repeat the Plaintiffs' legal position without setting forth matters upon which expert testimony is permitted. Accordingly, the motion to strike should be granted.

A.  **Case Background**[1]

The Plaintiffs are former management (i.e., non-union) employees of Commonwealth Electric Company ("Commonwealth Electric") and Commonwealth Gas Company ("Commonwealth Gas"). After Boston Edison Company ("Boston Edison") and Commonwealth Energy System ("Commonwealth Energy") merged in 1999, which merger ultimately resulted in the creation of NSTAR Electric and Gas Corporation ("NSTAR"), NSTAR retained pre-existing retiree health plans maintained by those companies, until April 1, 2003. At that time, NSTAR instituted changes to health and dental coverage, affecting all union and non-union retirees of both Boston Edison and Commonwealth Energy.

The Commonwealth Energy Post Retirement Benefit Program, established in 1993, has provided since that time that "the Company, through the Plan Administrator, may terminate the Program or discontinue Benefits hereunder at anytime..." In communications to employees and retirees regarding dental and other medical benefits, Commonwealth Energy consistently reserved

---

[1] The facts set forth herein are drawn from the "Statement of Undisputed, Material Facts Submitted by NSTAR Electric and Gas Corporation Pursuant to Local Rule 56.1," to be filed in support of Defendant's Motion for Summary Judgment in this case on March 4, 2005.

its right to modify benefits. Employee benefit handbooks provided that "[t]he Company reserves the right, subject to the provisions of any collective bargaining agreement, to amend, modify or terminate the Plan at anytime." Summary plan descriptions, distributed regularly to employees and retirees, likewise contained similar language.

The changes to retiree health and dental benefits instituted in April 2003 were intended to continue comprehensive retiree health benefits, while reducing expenses and the burden of maintaining different plans. Some changes enhanced health benefits for Commonwealth Energy retirees, while others aligned benefits with those afforded Boston Edison retirees.

In <u>Local 369, Utility Workers v. NSTAR Electric and Gas Corp.</u>, 317 F.Supp. 2d 69 (D. Mass. 2004), this Court entered summary judgment for NSTAR on claims by retirees of Commonwealth Electric Company, Commonwealth Gas and NSTAR who had been members of Local 369 of the Utility Workers Union. Their claims challenged the same changes to retiree health benefits at issue in this action, including adjustments to retiree dental coverage under special retirement programs instituted in 1997 and 1999. Their claims were based on the theory, also raised in this action, "that they were entitled to a life time of unaltered coverage under the Commonwealth plan." 317 F.Supp. 2d at 72.

This Court further considered benefit summary documents identical to those provided to some of the Plaintiff retirees in this action. These documents provided, <u>inter alia</u>, that "your dental coverage will be for your life." <u>See</u> <u>Local 369</u>, 317 F.Supp.2d at 74. This Court found any argument based on this provision unpersuasive: "[T]he [benefit] summaries provide that '[i]f any conflict arises between this description and the Plan document, or if we do not cover any point, the terms of the Plan document will always govern.' It is clear that the plan documents, not the plan

summaries, control... [T]he plan documents clearly allow for the plans to be changed or cancelled." 317 F.Supp. 2d at 74-75. In this regard, this Court held that "[t]he Master Medical, Medex and dental benefit plans...explicitly state that the plans can be changed or cancelled." 317 F. Supp. 2d at 74. In an accompanying footnote (317 F.Supp. 2d at 74 n.3), this Court cited to "[t]he Master Medical plan [which] stated that '[w]e may change a part of the contract,' and that '[y]our plan sponsor may cancel your contract for any reason.' Similarly, the Medex plan stated 'Blue Cross and Blue Shield will cancel your membership under this certificate only when...[y]our group terminates the contract.' The Delta Dental Plan of Massachusetts also provided that '[y]our plan' sponsor may cancel your contract for any reason.'"

Based on the foregoing, this Court concluded, "the welfare benefit plans at issue here did not provided for a lifetime of unaltered health insurance coverage. The plaintiffs' claim for breach of plan provision in violation of ERISA is dismissed." 317 F.Supp. 2d at 77. See also 317 F.Supp. 2d at 77 n.7 (even if promise of unalterable health benefits made under 1997 retirement program, that program also "stated [that ] [t]his summary is not intended to offer detailed descriptions of the System's employee benefit plans. All information furnished is governed by the provisions of the actual plan documents pertaining to the appropriate benefit plan. If any conflict arises between this summary and the System's employee benefit plan documents, or if any point is not covered, the terms of the appropriate plan documents will govern in all cases.' As already explained in detail, the terms of the...dental benefits plan explicitly provided that the plans could be changed or cancelled.").

4

B. **Carol Chandor**

1. **Ms. Chandor's Knowledge, Skill, Experience, Training And Education**

Ms. Chandor holds a bachelor of arts degree from the University of Northern Colorado. She holds no other degrees. (See Curriculum Vitae, Exh. C hereto). Ms. Chandor spent several years in the insurance industry before, in 1985, taking senior positions in employee benefit consulting firms which advise employers on matters such as reviewing and approving summary plan descriptions and other plan documents for employee welfare benefit plans. (See Exh. C hereto).

Ms. Chandor has testified as an expert at a labor arbitration, before the Massachusetts Labor Relations Commission (twice), and before the Commonwealth's Board of Conciliation and Arbitration. (See Exh. C hereto). However, she lists no expert testimony, either at deposition or at trial, in any judicial proceeding within the last four (4) years. (Compare Exh. C with Fed. R. Civ. P. 26(a)(2)(B)). In addition Ms. Chandor has not authored any publications of any sort within the last ten (10) years. (Compare Exh. C with Fed. R. Civ. P. 26(a)(2)(B)).

2. **Ms. Chandor's Opinions**

Ms. Chandor's report expresses the opinion that certain plan documents utilized by Commonwealth Gas "are typical of those used by health and dental insurance providers in Massachusetts." (Exh. B at 3).[2] She adds: "In preparing and issuing summary plan descriptions Massachusetts health and dental insurers typically include a provision allowing the plan sponsor (the employer who provides and purchases the insurance coverage or its employees and retirees) to

---

[2]Ms. Chandor's report never addresses language in Commonwealth Energy's summary plan descriptions, reserving the Company's right to modify or eliminate benefits. (See Statement of Undisputed Material Facts Submitted by NSTAR Electric and Gas Corporation and Commonwealth Gas Company pursuant to Local Rule 56.1, par. 7).

5

terminate the coverage at any time." (Exh. B at 4).

In addition, her report refers to a standard document ("Information Relative to Employee Benefits Upon Your Retirement Date") provided to retirees under retirement programs in 1997 and 1999, and concludes: "There is no conflict between the promise [therein] that 'Your dental coverage will be for your life,' in documents given to plan participants and the standard provision stated in the Summary Plan Description(s) that allows the plan sponsor to 'cancel the plan' at any time." (Exh. B at 5). In conclusion, Ms. Chandor writes: "It is clear that lifetime dental coverage is promised to the participant, and that the employer is guaranteeing this coverage. The standard termination clause in the Summary Plan Description and/or insurance contract does not eliminate this guarantee." (Exh. B at 6).

C. **Argument:** **MS. CHANDOR CANNOT TESTIFY AS AN EXPERT IN REGARD TO THE MATTERS SET FORTH IN HER REPORT.**

Rule 702 of the Federal Rules of Evidence provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The three requirements embodied in the rule -- qualifications; testimony on specialized knowledge; and assistance of the trier in fact -- must be satisfied in order for expert testimony to be admitted into evidence. U.S. v. Shay, 57 F.3d 126, 132 (1st Cir. 1995).

Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the District Court plays the role of "gatekeeper," ensuring that fact-finding is not distorted by inappropriate testimony. Correa v. Cruisers, A Division of KCS International, Inc., 298 F.3d 13, 25

(1ˢᵗ Cir. 2002). This "gatekeeping" function extends both to scientific and to other technical and specialized expert testimony. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

Legal conclusions are wholly inappropriate as subjects for expert testimony. "It is black-letter law that '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 (1ˢᵗ Cir. 1997) [quoting U.S. v. Newman, 49 F.3d 1, 7 (1ˢᵗ Cir. 1995) (quoting Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 512 (2ⁿᵈ Cir.), cert. denied, 434 U.S. 861 (1977)]. At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule. 'Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect....' This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial." Nieves-Villanueva v. Soto-Rivera, 133 F.3d at 100 (quoting Burkhart v. Washington Metropolitan Area Transit Authority, 112 F.3d 1207, 1212 (D.C. Cir. 1997)).

In one of the cases cited approvingly in Nieves-Villanueva -- Marx Co v. Diners' Club, Inc., 550 F.2d 505, 509 (2ⁿᵈ Cir. 1977) -- the court found that a district court erred in admitting "expert" testimony consisting of "legal opinions as to the meaning of the contract terms at issue." The court in Marx & Co. held that "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Marx & Co., 550 F.2d at 509-510. "'The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony.'" Marx & Co., 550 F.2d at 510 (quoting Loeb v. Hammond, 407 F.2d 779, 781 (7ᵗʰ Cir. 1969)).

Applying these principles to this matter, it is apparent that Ms. Chandor's report must

7

be stricken, and any expert testimony from her barred.

1. **Ms. Chandor's Opinions Do Not Concern Scientific, Technical Or Other Specialized Knowledge Which Will Assist The Finder Of Fact.**

Expert testimony should only be admitted when it pertains to scientific, technical or other specialized knowledge. FRE 702. As shown by her report, Ms. Chandor claims expertise in evaluating whether Commonwealth Gas guaranteed lifetime dental coverage to retirees under the two special programs, and whether specific documents gave the Company any right to modify dental benefits. Such alleged expertise is not the sort of "specialized knowledge" admissible under Rule 702. "In determining whether experts should be used, [a court considers] whether an untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Smith v. Colorado Interstate Gas Co., 794 F.Supp. 1035, 1044 (D. Colo. 1992).

By testifying to her opinion that Commonwealth Gas cannot modify dental benefits (at least based on the data referred in her report), Ms. Chandor will usurp the role of this Court. "Mere qualification as an expert is not a license to invade the jury's function by telling the jury what result to reach; nor is it appropriate for an expert to supplant the judge's function to instruct the jury on the law." Fund of Funds, Ltd. v. Arthur Andersen & Co., 545 F.Supp. 1314, 1372 (S.D.N.Y. 1983) (citations omitted). "Testimony which articulates and applies the relevant law circumvents the fact-finder's decision making process by dictating how to decide the case or what result to reach." Smith v. Colorado Interstate Gas Co., 794 F. Supp. at 1044.

Here, Ms. Chandor seeks to usurp the role of this Court by (1) interpreting the document with the "lifetime" language; (2) interpreting some (but not all) plan documents; and (3)

concluding therefrom whether Commonwealth Gas made "guarantees" to prospective retirees. If advanced by Plaintiffs' counsel, such arguments would come as no surprise, and would be addressed in the usual and regular manner. When put in the mouth of a reputed expert, however, these arguments become an improper attempt to direct a ruling for Plaintiffs on an issue which courts and factfinders regularly address -- the interpretation of documents, and their legal effect. See Loeb v. Hammond, 407 F.2d at 781 ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony.").

Indeed, Ms. Chandor's report seeks directly to intrude upon a ruling on summary judgment by this Court in Local 369. As discussed above, this Court held that "[t]he Master Medical, Medex and dental benefit plans...explicitly state that the plans can be changed or cancelled." 317 F.Supp. 2d at 74. Ms. Chandor's report now seeks to explain, as a matter of "expert" opinion", that the very same provisions relied upon by this Court in granting summary judgment have no significance. Ms. Chandor's attempt to usurp the role of this Court should be rejected.

2. **Ms. Chandor Is Not Qualified By Knowledge, Skill, Training Or Education To Render An Opinion On Whether Commonwealth Gas Made Any "Guarantees."**

Assuming arguendo that Ms. Chandor will testify to specialized knowledge which will assist the trier of fact in determining a relevant issue, the inquiry does not end there. Rather, Plaintiffs must establish that Ms. Chandor's "opinions are based upon specialized skill, training, or experience." U.S. v. Shay, 57 F.3d at 13. "A valid connection [must] exist between the expert's testimony and a disputed issue." Id. at n.5.

Ms. Chandor's qualifications do not meet this standard. Nothing in her report or

9

curriculum vitae (Exhs. B and C hereto) demonstrates that she has any experience in determining the legal effect of documents. Ms. Chandor is not a lawyer, and indeed holds no master or doctorate degrees. That she has experience in reviewing summary plan descriptions, among other documents for employee benefit plans, does not equip her to describe for a fact-finder when Commonwealth Gas made "guarantees" about retiree benefits. "Unless the witness's opinions are informed by expertise, they are no more than the opinions of a lay witness." U.S. v. Shay, 57 F.3d at 133.

Excluding Ms. Chandor's opinions, when she lacks the specialized knowledge and experience that others possess, is consistent with case law excluding experts who have general knowledge of an area, but lack the specific knowledge at issue in a particular action. See Harper v. Godfrey, Inc., 63 Fair Empl. Prac. Cas. (BNA) 1223, 1236 (E.D. Wis. 1993), aff'd in part, rev'd in part on other grounds, 66 F.3d 1258 (7th Cir. 1995) (expertise in mathematics does not allow a person to render expert opinions on presence of discriminatory motive); Havenfield Corp. v. H&r Block, Inc., 509 F.2d 1263, 1273 (8th Cir.), cert. denied, U.S. (1975) (no abuse of discretion in excluding witness with "limited experience" on matter about which he was to testify; "It is important that expert witnesses have experience in transactions that are as similar as possible to the transaction upon which they are being asked to comment.").

D. **Conclusion**

For all the above reasons, Ms. Chandor's report should be stricken, and her testimony at trial or at any other stage of this proceeding barred. In the alternative, if the instant motion is denied, Defendants should be granted leave to depose Ms. Chandor.

Respectfully submitted,

NSTAR ELECTRIC AND GAS CORPORATION,

By its Attorneys,

MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666

By: /s/ Keith B. Muntyan
Keith B. Muntyan
B.B.O. #361380
Robert P. Morris
B.B.O. #546052

Dated: March 4, 2005

Respectfully submitted,

NSTAR ELECTRIC AND GAS CORPORATION,

By its Attorneys,

MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666

By: /s/ Keith B. Muntyan
Keith B. Muntyan
B.B.O. #361380
Robert P. Morris
B.B.O. #546052

Dated: March 4, 2005

## CERTIFICATE OF SERVICE

I, Robert P. Morris, certify that on March 4, 2005, I caused to be served a copy of the within pleading by hand on counsel for Plaintiffs, Warren H. Pyle, Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108.

/s/ Robert P. Morris
Robert P. Morris