UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
LOUIS BALESTRACCI, JEAN              )
BONVILLE, ANDREW CARR, ROBERT        )
COMEAU, LEO CONNELLY, JR.,           )
JOHN H. CORCORAN, JR., THOMAS        )
DEARN, RICHARD ELDREDGE,             )
RICHARD FLETCHER, BRIAN              )
HAWKESWORTH, BEAUFORD HUNT           )
ROBERT LAWRENCE, JOSEPH LOPES,       )
DAVID MANN, GARY MEYN,               )    Civil Action No. 04-CV-11103-EFH
RUSSELL NICKERSON, DIANE             )
OWENS, ERNEST QUINTIN, DONNA         )
RENE, JOSEPH SOCHA, STEPHEN          )
WATTS, and DUNSTAN WHITLOCK          )
            Plaintiffs               )
v.                                   )
                                     )
NSTAR ELECTRIC & GAS                 )
CORPORATION                          )
            Defendant                )
_____)
```

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiffs oppose defendants' motion for summary judgment and in support thereof direct the Court's attention to their main memorandum, their Response to Defendant's Statement of Undisputed Material Facts and Supplement to Their Statement of Material Facts, and this Opposition.

I. THIS CASE IS NOT GOVERNED BY THE COURT'S DECISION
IN THE LOCAL 369, UTILITY WORKERS CASE

Defendant's summary judgment memorandum argues primarily that this case is controlled by the Court' decision in Local 369, Utility Workers Union of America v. NSTAR Electric and Gas Corporation, 317 F.Supp.2d 69 (D.Mass. 2004). This, as we will show, is incorrect. In Local 369, the plaintiffs sought a broad ruling under section

1

301 of the Labor Management Relations Act, 29 U.S.C. § 185, that under a series of collective bargaining agreements between Local 369's predecessors and Commonwealth Energy System subsidiaries, all past retirees were entitled to continued, unmodified health and dental benefits, including Medicare Part B reimbursement. In this case plaintiffs' claim is based on the provisions of ERISA plans and on different theories of recovery. The Local 369 plaintiffs referred to the 1997 Personnel Reduction Program (PRP) in connection with their section 301 claim based on their collective bargaining agreements, but did not make a claim based on the 1997 PRP itself, or the 1999 Voluntary Separation Program (VSP) as plaintiffs here do.

II.

Plaintiffs agree that ERISA welfare benefit plans are not automatically vested. However nothing in ERISA precludes or is hostile to an employer's contractual agreement or plan commitment to lifetime welfare benefits. "Thus, it is an issue of contract interpretation whether [Commonwealth Gas] vested its retirees with post-retirement welfare benefits" Murphy v. Keystone Steel & Wire Co. 61 F.3d 560, 564 (7th Cir. 1995), cited in Automobile Workers (UAW) v. Rockford Powertrain, 350 F.3d 698, 702 (7th Cir. 2003).

The Court's opinion indicates that Local 369 plaintiffs made two principal arguments: First, that the provisions of the various collective bargaining agreements (CBAs) that "eligible employees … will be covered under the terms and conditions of Blue Cross and Blue Shield of Massachusetts Master Medical Certificate, MM CES 3, as amended, or Medex Subscriber Certificate, Medex CES 1, as amended [and similar language for dental benefits]" somehow extended to employees after they retire. The

Court ruled that phrases such as "eligible employees will be covered" does not include retired employees and rejected that argument. Plaintiffs in this case do not rely on those CBAs that do not specifically provide for retirees' benefits. Second, the plaintiffs in Local 369 argued, in support of the section 301 claim that the CBAs – which did not mention retiree benefits at all – provided lifetime health and dental benefits because some plaintiffs received benefit summaries that stated "your medical coverage will be for your life" and "your dental coverage will be for your life." The court pointed out that those benefit summaries were not incorporated into the CBAs.

Plaintiffs in this case base their claims not on section 301, but under ERISA. As argued in plaintiffs' main memorandum, the relevant documents constituting the ERISA plan are the plan descriptions distributed to employees in 1997 and 1999, together with the personalized plan summaries given to the employees.

The 1997 PRP plan document provided:

3. Employees who were at least forty (40) and had completed at least twelve (12) full years of System service as of January 1, 1993 and currently meet the "Rule of 75" will be entitled to medical and dental insurance coverage providing they pay At age 62 the Company will pay 100% of the premiums.

(Attachment 10 to Plaintiffs' statement of material facts) The 1999 VSP plan document (PSt., Exhibit D) did not spell out the dental benefits to be provided to retirees eligible for retirement health and dental benefits. It stated only:

Health Coverage

…

If you are eligible for post-retirement medical, dental and life insurance coverages, you will receive information from Human Resources-Benefits at the time of your termination.

3

Prior to their final retirement decisions, Commonwealth Gas gave each employee personalized summaries that specifically stated that dental benefits would be provided for the retiree's lifetime and to his or her surviving spouse for an additional year. These documents made clear the intention of Commonwealth Gas in extending the PRP and VSP to the employees. As to dental benefits the 1997 and 1999 personalized documents provided:

> Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored dental plan at your Actual Retirement Date.
>
> You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62.  When you reach age 62, the Company will pay the entire premium.
> Since you were age 40 and had 12 or more years of employment as of January 1, 1993, you will be covered by the Company sponsored dental plan at your Actual Retirement Date.
>
> You will pay 10% of the current premium (the premium in effect as of the first of the year in which you retire) from age 55 to age 62.  When you reach age 62, the Company will pay the entire premium.
>
> Coverage for your spouse and/or any eligible dependent(s) will be provided.
>
> Your dental coverage will be for your life.  Your spouse and/or eligible dependents will be covered for 12 months after your death.  At the end of the 12 months, your spouse and/or eligible dependents will be offered continuation of coverage through COBRA.

Defendants argue that various disclaimers in other documents defeat the employees' claims for lifetime dental benefits. First, the terms of the "Commonwealth Energy Post Retirement Benefit Program," established in 1993 were never communicated to the Union or the employees. (PSt. ¶ 8) and are therefore not relevant. Defendants also refer to various summary plan descriptions for *particular* health and dental plans issued by particular insurers, which generally, buried in their lengthy terms, state that the insurer

4

or the company may terminate coverage under the particular plan. These disclaimers do not affect plaintiffs' claims for lifetime coverage under the plans and individualized summaries, because the plans and summaries promise dental coverage for life, not dental coverage under any particular insurer or policy.

Over the years Commonwealth Gas' health and dental plans changed from year to year. (P.St. ¶ 18; Plaintiffs' Response to Defendant's Statement of Material Facts and Statement of Additional Material Facts, ¶ 38) Each CBA referred to specific health and dental plans by name and number. As the expert affidavit of Carol Chandor shows, these provisions are typical of those in health and dental policies generated by Massachusetts group insurers. However, the personalized summaries, unlike the CBAs, the 1997 and 1999 memorandum agreements, in describing the dental benefits to be provided to those retirees, did not refer to any particular insurance carrier or plan. Nor did the 1997 and 1999 plan documents provided to the prospective retirees refer to any particular insurance provider or plan. And the personalized summaries given to individual employees simply provided that dental coverage would be for the employee's lifetime, again without reference to any particular insurer or plan.

The difference is significant and controlling. While the CBAs required the company to maintain in force particular health and dental plans provided by particular insurance companies, the 1997 and 1999 memoranda, plan documents and personalized summaries simply provided for lifetime health and dental coverage. The Court dismissed Local 369's section 301 claims for lifetime dental coverage because Local 369 relied on the CBAs, which, unlike the plan documents in this case, specifically referred to and

effectively incorporated particular insurance carriers and particular policies which included disclaimers.

Carol Cormier was supervisor of payroll and employee benefits for Commonwealth Gas from September 1987 through October 1997 and benefits coordinator for Commonwealth Energy Systems thereafter through 2000. In these capacities she administered benefit plans on a daily basis. During that time she met with Commonwealth Gas employees who had questions about their benefits. She testified in a deposition that she never discussed the language of summary plan descriptions with employees. In speaking with a Commonwealth Gas employee considering retirement in1997 she would have said that he had medical coverage for his lifetime. She added that it would not necessarily be the same plan as on the date of retirement. That was because coverage changes when you go on a different plan. She added that she would not have told an employee that the company could eliminate Master Medical and bring in another plan or that the company had a right to do so. Her opinion was that the company could change a benefit to something similar or change to a different product. (Plaintiffs' Response to Defendants' Statement of Material Facts and Additional Material Facts, ¶ 37).

Defendants finally rely on oblique language in the 1997 and 1999 plan documents – language not included in the 1997 and 1999 memoranda of agreement – that say that plan documents are the last word and that in the event of any conflict between the summary and unspecified "employee plan documents" the "appropriate plan documents" govern. This language could be construed to mean anything or nothing. It does not satisfy the requirement of ERISA that a summary plan description include "circumstances which

may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. §1022(b). As we have shown, the current collection of summary plan descriptions, given employees *after* their retirements, running 240 or more pages, contain detailed descriptions of benefits and, buried in the text under the headings of "Your Rights," state that the company can cancel the particular plan. These documents, which are not specifically identified or specifically referred to in the memoranda, the 1997 and 1999 plan documents and the personalized summaries, do not give the kind of notice ERISA courts require to make disclaimer language. If "a participant has to read and understand the policy in order to make use of the summary, then the summary is of no use at all." Hansen v. Continental Life Ins. Co., 940 F.2d 971, 981-982 (5th Cir. 1991). Courts have ruled that where the document promising health or dental insurance for life has no reservation of rights, but the employer relies on another document that does have disclaimer language, the other document is not relevant, unless the employee's attention is somehow specifically directed to the document with a reservation of rights. See Diehl v. Twin Disc, Inc., 102 F.3d 301 (7th Cir. 1996), Heidgerd v. Olin Corp., 906 F.2d 903, 907-908 (2d Cir. 1990).

Defendants rely on UAW v. Rockford Powertrain, Inc., 350 F.3d 698 (7th Cir. 2003). But in that case there was both a lifetime benefits clause and a reservation of rights clause *in the same document*. The court cited Abbruscato v. Empire Blue Cross and Blue Shield, 274 F.3d 90, 99 (2nd Cir. 2001) where the court said:

> Here ... we have SPD language that both appears to promise lifetime life insurance coverage at a particular level *and* clearly reserves Empire's right to amend or terminate such coverage. Because the same document that potentially provided the 'lifetime' benefits also clearly informed the employees that these benefits were subject to modification, we conclude that the language contained in

7

the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits.

(emphasis in original).

As to the 1999 VSP (but not the 1997 PRP), defendants rely on purported disclaimer language at the foot of page 11 of the plan document, PSt. Exhibit D: *"The Company reserved the right to change or terminate coverage for current and former employees at any time. Any such changes may be in the benefits provided, the contributions required, or in any other aspect in accordance with applicable laws."* The flaw in defendant's reliance on this language is that the 1999 plan document did not provide details for any dental coverage. At page 5 of the plan document, it was stated: "Under the 1999 Voluntary Separation Program … If you are eligible for post-retirement medical, dental and life insurance coverages, you will receive information from Human Resources-Benefits at the time of your termination." At page 11 it was stated: "Medical/Dental: For those employees who are eligible for post-retirement medical/dental benefits: Coverage will continue to eligible employees and eligible dependents. Certain employees might be responsible for co-payment of premiums." Thus, the terms concerning dental benefits to be provided were left to later communications from the company. When the employees met with the representatives of human resources to discuss their benefits they were given the personalized summaries which flatly promised that "Your dental coverage will be for your life. Your spouse and/or eligible dependents will be covered for twelve months after your death." The personalized summaries contained no disclaimer.

As we have shown, courts will honor and enforce disclaimers that are contained in the same document as the promise of lifetime benefits; otherwise those commitments are

8

not enforced. Defendants may argue in 1999 the dental benefits were "for life" but that the company reserved the right to cancel them. This sort of sophistry does not meet the standards of ERISA disclosure. Benefits are either guaranteed for lifetime or they are not. Thus, the Court should enforce the lifetime promise made to the 1999 plaintiffs in their personalized summaries.

### III. IF THE 1999 VSP DID NOT INCLUDE LIFETIME DENTAL BENEFITS, COMMONWEALTH GAS BREACHED ITS FIDUCIARY DUTY TO THE 1999 PLAINTIFFS BY MISREPRESENTING THE PLAN'S BENEFITS

Commonwealth Gas had the right, as *settlor* of the 1999 VSP, to set its terms. However it also had an obligation as the *administrator* of the 1999 VSP not to misrepresent its terms to the employees. Thus, if the 1999 plan, as construed by the Court, does not provide lifetime dental benefits, then Commonwealth Gas violated its fiduciary duty by telling employees, in unqualified language, in the *personalized summaries of benefits* that their dental coverage was for their lifetimes. "To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries.' As other courts have held, '[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 401(a) or ERISA." Varity Corporation v. Howe, 516 U.S. 489, 506 (1996). Where a denial of benefits breaches a fiduciary duty, equitable relief under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) is appropriate, unless, as the Supreme Court said in Varity, "[C]ongress elsewhere provided adequate relief for a beneficiary's injury…" 516 U.S. at 515.

If the Court determines that the plan did not provide lifetime benefits because of the disclaimer in the plan document, relief is not available to the 1999 plaintiffs under

9

section 502(A)(1) because that subsection provides relief only for denial of "benefits due … under the terms of [the] plan." Yet, if the plan's disclaimer defeats the claim for lifetime dental benefits, the plain and unqualified statements in the personalized summaries that "dental benefits are for your lifetime" is a lie and a misrepresentation. We submit that Congress did not intend that an employer may lie and misrepresent to employees with impunity about the terms of an ERISA plan. Accordingly the 1999 plaintiffs are entitled to relief under section 502(a)(3) if their claim under section 502(a)(1) is defeated by the plan's disclaimer language.

Respectfully submitted:

LOUIS BALESTRACCI, et al.,

By their attorneys,

  s/Warren H. Pyle_____
Warren H. Pyle, BBO # 408400
Pyle, Rome, Lichten, Ehrenberg
   & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
Tel: (617) 367-7200

Dated: April 8, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record, by hand delivery, on April 8, 2005.

  s/Warren H. Pyle_____
Warren H. Pyle