UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
LOUIS BALESTRACCI, JEAN                 )
BONVILLE, ANDREW CARR, ROBERT           )
COMEAU, LEO CONNELLY, JR.,              )
JOHN H. CORCORAN, JR., THOMAS           )
DEARN, RICHARD ELDREDGE,                )
RICHARD FLETCHER, BRIAN                 )
HAWKESWORTH, BEAUFORD HUNT              )
ROBERT LAWRENCE, JOSEPH LOPES,          )
DAVID MANN, GARY MEYN,                  )    Civil Action No. 04-CV-11103-EFH
RUSSELL NICKERSON, DIANE                )
OWENS, ERNEST QUINTIN, DONNA            )
RENE, JOSEPH SOCHA, STEPHEN             )
WATTS, and DUNSTAN WHITLOCK             )
                    Plaintiffs          )
v.                                      )
                                        )
NSTAR ELECTRIC & GAS                    )
CORPORATION                             )
                    Defendant           )
_____)

PLAINTIFFS' RESPONSE TO DEFENDANTS' REPLY MEMORANDUM
ON CROSS MOTIONS FOR SUMMARY JUDGMENT

I. This Case is not Governed by the Court's *Local 369* Decision
Because the Facts Presented and the Arguments Made in
this Case are Completely Different and Were not Addressed in *Local 369*

Defendants again argue that this case is governed by the Court's decision in Local

369, Utility Workers Union of America v. NSTAR Electric and Gas Corporation, 317

F.Supp.2d 69 (D.Mass 2004). As we demonstrated in our Memorandum in Support of

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, this is not the case.

In Local 369 the union sought a broad ruling that all the changes in retiree health and

dental benefits violated the collective bargaining agreements between Local 369's

predecessors and Commonwealth Energy Systems. In this case Local 12004's claims are

limited to those employees who retired under 1997 and 1999 voluntary early retirement plans.

NSTAR cites two parts of the Court's opinion. At 317 F.Supp.2d at 74-75 the Court disposed of Local 369's contention that the phrase "eligible employees" and "will be covered" in the series of collective bargaining agreements (CBAs) included *retired employees*. The Court noted that "the collective bargaining agreements explicitly incorporate the provisions of the Master medical, Medex and dental plans [and that] the Master Medical, Medex and dental benefit plans, in turn, explicitly state that the can be changed or cancelled." Id. at 74. [1]

Here the plaintiffs do not rely on the CBAs. Rather, plaintiffs have sued on the 1997 and 1999 voluntary early retirement plans which provided attractive incentives for early retirements that would reduce the company's payrolls.

It is important to note that the collective bargaining agreements discussed in the Local 369 opinion at pages 74-75, specifically refer to and incorporate particular insurance providers and specific certificate or plans. We have shown that this company, like many Massachusetts employers, often changed insurance carriers and insurance certificates or programs. (PSt. ¶¶ 43-44) Thus, the fact that the promise of lifetime retiree health and dental insurance to the 1997 and 1999 early retirees was not stated as a promise of a *particular* health or dental plan or certificate, such as was done in the Local 369 CBAs as well as the Local 12004 CBAs is fully consistent with a promise of lifetime coverage.

---

[1] The Court noted that: "The plaintiffs contend that the collective bargaining agreements provided a lifetime of unaltered coverage because some plaintiffs received benefit summaries that stated 'your medical insurance coverage will be for your life' and 'your dental coverage will be for your life.' The benefit summaries, however, were not incorporated into the terms of the collective bargaining agreements, as were the provisions of the Master Medical, Medex and dental benefit plans themselves." 317 F.Supp. 2d at 74.

In connection with the 1997 and 1999 memorandum agreements Commonwealth Gas distributed plan documents that promised those who retired continued health and dental coverage *without* reference to any particular insurance carrier or and particular certificate or policy. And those who retired under the terms of the 1997 and 1999 plans were given individualized summaries of their retirement benefits.  Those individualized summaries (PSt. 28, 36) promised lifetime dental coverage, again without reference to any particular insurance carrier or certificate or policy.

> Your dental coverage will be for your life.  Your spouse and/or eligible dependents will be covered for 12 months after your death…

In short, *none* of the documents the 1997 and 1999 retirees rely on – the plan documents and the individualized summaries – mention or promise coverage under any specific insurance carrier, certificate or policy. In other words, unlike the CBAs, Commonwealth Gas was simply promising lifetime dental coverage, *not* coverage under any particular insurance carrier or policy. Thus, the fact a disclaimer was buried in the dental certificate given the plaintiffs after they retired is not relevant or controlling.

In construing contracts, courts have always sought a construction which will give meaning to *all* provisions of a document.  Mastrobuono v. Hutton, 514 U.S. at 63, 115 S.Ct. 1212 (1995) (courts must endeavor to read a contract in a manner that gives effect to all provisions and that causes them to be consistent with one another).  NSTAR's argument would leave the words "your dental coverage will be for your life," without meaning or effect. It would sanction a fraud on the employees. It would, if judicially sanctioned, be a precedent for employers to promise anything as long as they had a reservation of a right to cancel buried in another document not explicitly incorporated

therein, a document that employees and retirees do not read.  Plaintiff's position is that

NSTAR's predecessor, Commonwealth Gas, did intend to provide lifetime dental

coverage as part of the incentive to encourage eligible employees to take early retirement.

Plaintiffs' position is that Commonwealth Gas did not promise that it would continue the

exact terms of any dental plan, but it did promise that there would be lifetime dental

coverage for the employee and his spouse. Thus, if Commonwealth Gas had decided to

use a different dental insurance provider or to add a rider or to make some other change,

that would not offend the promise of the 1997 or 1999 memorandum agreements or plans

or the language of the individualized benefit summaries.

Thus, the facts of this case are different from those in Local 369, and the analysis

and arguments advanced herein were not presented in Local 369. This case is not

governed by Local 369, and if anything in that opinion could be construed as addressing

the facts present and arguments advanced herein, it should not be controlling.

As we have previously demonstrated, the" [1993] documents establishing

Commonwealth Energy's retirement programs (which clearly reserve the Company's

right to discontinue benefits)" were never distributed to employees. See, PSt. ¶ 8, quoting

Commonwealth Energy System's Director of Total Benefits. The fact that buried in

various summary plan descriptions prepared by insurers are statements that those

particular certificates or plans can be discontinued is not relevant because the 1997

memorandum, plan documents and individualized summaries promise lifetime dental

coverage and do not – unlike the CBAs – incorporate or refer to any insurer or particular

plan. Plaintiffs are suing under the promise of lifetime coverage in the memorandum

agreements, the plans and the individualized summaries, not under the terms of any

particular dental summary plan description.

Finally, it must be noted that in 1997, *for the first time*, documents summarizing

retiree benefits explicitly promised dental coverage for the retiree's lifetime. Mr.

Peloquin testified, with regard to the new language, that "this, we felt was an accurate

reflection of the benefit people would receive at that time." (PSt. ¶¶ 16, 17) It makes no

sense to suggest that the newly minted lifetime commitment was a sham because of

language hidden in another document not referred to or incorporated by reference.

Conclusion

Plaintiffs have demonstrated that on the undisputed material facts they are entitled

to summary judgment.[2]

Respectfully submitted:

LOUIS BALESTRACCI, et als.,
By their attorneys,


 s/Warren H. Pyle
Warren H. Pyle, BBO # 408400
Pyle, Rome, Lichten, Ehrenberg
   & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
Dated: May 11, 2005        Tel: (617) 367-7200


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon all
counsel of record, by first class mail, on May 11, 2005.

 s/Warren H. Pyle
Warren H. Pyle

---

[2] Alternatively, if the Court finds that the relevant documents are ambiguous – which plaintiffs do not concede – the interpretation is a question for trial.